### ROCKFORD PEERLESS FURNITURE CO. v. ABRAMSON.

(Circuit Court of Appeals, Seventh Circuit. September 13, 1922.)

No. 3025.

1. Patents ⊂⊃328—1,253,657, for floor lamp, valid and infringed.

    The Abramson patent, No. 1,253,765, for base and pedestal of electric floor lamp, *held* valid and infringed by one structure of defendant and not infringed by another.

2. Patents ⊂⊃18—Making parts separable not invention.

    The mere fact that base and pedestal of an electric floor lamp were separable, to aid in shipping, would not show invention.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Matilda J. Abramson, as administratrix of the Estate of Alfred C. Abramson, against the Rockford Peerless Furniture Company. Decree for complainant, and defendant appeals. Reversed in part.

Lincoln B. Smith, of Chicago, Ill., for appellant.

Otto R. Barnett, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. [1] The appeal is from a decree finding valid and infringed United States patent No. 1,253,765, to Abramson, January 15, 1918. The stated object of the invention is to

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

provide electric floor lamps with base and pedestal separable to facilitate knock-down shipment; the pedestal being fully equipped at the factory with electric wiring and plug, so that the dealer may readily assemble the lamp for immediate use without the necessity of attaching the plug to the wire after base and pedestal are joined together. Figure 4 of the patent drawing is as follows:

The figure represents the base and the pedestal; 7 is a hole through the center, through which, either the pedestal itself or a hollow rod extending through the pedestal, projects, for holding the pedestal to the base either by screwing the pedestal into threads of the hole, or by a nut at the lower end of the rod, whereby pedestal and base are drawn together; 17 shows another hole in the base just outside of the edge of the pedestal as it rests upon the base, and 19 is a slot connecting these holes. The wire is threaded through the pedestal, connected with the lamp at the top of the pedestal, and with the plug at the other end of wire for attachment—all complete for use. The parts are assembled by first looping the wire down through the slot and holes and fastening the base and pedestal together, whereby the wire comes through hole 17 in the base just outside of the edge of the pedestal as it rests on the base.

The separability of base and pedestal is a great advantage in shipping the lamps. The base being usually much broader than the pedestal, if the lamp is assembled at the factory, considerable waste space results in packing; but, with the parts separated, bases can be compactly crated in one package, and pedestals in another, materially reducing the bulk and effecting a saving in freight charges.

[2] But separability alone would not be patentable. Its possibility and advantages are perfectly obvious. But invention may reside in particular means to such an end. If the hole at 7 were large enough to pass the plug through it to the bottom of the base and the wiring with plug attached then passed out under the base, it would scarcely be contended that this would involve invention; and if this were all that Abramson disclosed, he would not have been entitled to a patent. Patent 1,039,119, to Dalzell & Scroggins, 1912, shows a lamp with separable base and electric wiring extending down through the base and out between the legs or openings of the base. Patent 1,081,498, to Gudeman, 1913, shows something quite similar, the wiring passing out through a groove in the base, although in that instance it appears to emerge through a hole in the outer shell of base and pedestal. But if it were desirable to have the plug fastened to the wire before the bottom is put in place, it would be so simple to have a suitable slot opening therefor in the shell that this could not involve invention.

In the patent in issue, however, the two holes in the base with connecting slot, while simple, is not so obvious an arrangement that it can be said invention was not involved in devising it. The holes need not be large enough to admit a plug passing through them. If the hollow rod construction is adopted, hole 7 need only be of size sufficient

for the rod to pass through, and hole *17* just large enough for the wire. The Abramson device is ingenious and apparently useful, and we find the patent valid for the improvement he has shown, notwithstanding the somewhat broad claims allowed him.

Appellant's device No. 1 concededly infringes, and the question of infringement turns on its device No. 2. This shows a base and pedestal, separable and capable of being separately crated and shipped; but it has not the holes with connecting slot through the base, which seems to be the distinctive feature of the patent. With device No. 2 there can be no looping down and up of the electric wire as in the patent; but the one hole through the base, which is in the center, must be large enough so that the attached plug may be passed through it. It then passes to the outside by means of a groove cut in the bottom of the base from the center hole to the edge; the groove being small enough and deep enough so that the wiring is frictionally held in and by the base from contact with the floor. It is argued that one of the advantages of the patent is that the cord does not come in contact with the floor and is therefore protected from wearing out. But to hold the cord from the floor does not of itself involve invention. Dalzell & Scroggins might by some simple device have held their cord from the surface on which their lamp rested, and this would not have involved invention. Gudeman's cord does not touch the floor, and Figure 2 of the British Byng patent, 5,418 of 1911, shows the wire coming out of the pedestal just above its attachment to the base, and this does not come in contact with floor. But, whether touching the floor or not, appellant's device No. 2 is entirely wanting in the distinctive feature of the slotted opening through the base, wherein resides the novelty of Abramson's invention. We are of opinion that device No. 2 does not infringe.

Respecting appellant's contention that it is in any event entitled to a shop right in the patent, we have carefully examined the evidence on that question, and conclude that we would not be warranted in disturbing the finding of the District Court, adversely to such right.

The decree of the District Court is affirmed, in so far as it finds the patent valid and infringed by appellant's device No. 1, and reversed as to the finding that appellant's device No. 2 infringes.

Each party shall pay one-half the costs of this court.